Nott, J.,
delivered the opinion of the court:
This is an action brought to recover §500,000 for non-performance on the part of the defendants, under their agreement for the purchase of 100,000 muskets.
On the 7th January, 1862, the Chief of Ordnance, by direction of the Secretary of War, offered to the claimant an order for 100,000 Springfield rifled muskets, at §20 apiece, to be delivered at various specified times, beginning with the month of July, 1862. The claimant, on the 20th of January, accepted the offer.
This agreement was sought by the United States. A leading object in that early stage of the war -was to acquire, in the extensive machine works of the claimaut, “an efficient armory to furnish arms for the government.”
“Mr. Mason,” as appears from the evidence, “had been engaged in manufacturing cotton machinery and locomotives principally — of cotton machinery since 1842, and of locomotives since 1852. At the breaking out of the war his works were extensive, having, in 1861 and 1862, about five hundred hands; at this date he employed seven hundred' hands. His works extended over, in 1862, six or seven acres, and inclosed about .thirty buildings; at that time he had invested iu his works some four or five hundred thousand dollars. His manufactures amounted in I860 to §381,000, in 1881 to §400,000, in 1882 to §340,000, in 1863 to §600,000, in 1864 to §740,000.”
*67 Accordingly it was inserted in a postscript to the offer that, instead of 50,000 muskets, as originally proposed in the body of the offer, “ 100,000 will be received, if manufactured in your oten establishment in Taunton, Massachusetts P
The claimant proceeded “to manufacture and purchase the necessary tools and machinery,” making expenditures and incurring liabilities to the amount of nearly $800,000, of which $75,000 were for tools and machinery, and $500,000 for materials to be used in manufacturing the guns.
On the 13th of March, 1802, the Secretary of War appointed the Holt-Owen commission, “to investigate all claims ancl contracts in respect to ordnance, arms, and ammunition in the War Department, and adjudicate the sameP
On the 15th of May, 1862, the Holt-Owen commission decided “ that the order to Mr. Mason be confirmed, subject to all its terms, to the extent of 30,000 muskets, upon condition that he shall, within fifteen days after notice of this decision, execute bond, with good and sufficient sureties,n &c., “for the performance of the contract as thus modified.” The commission also decided that upon his failure or refusal to execute such bond, “ the said order shall be declared annulled and of no effectP
On the 20th of June the claimant wrote to the Chief of Ordnance:
“X have executed the quadruplicate copies of contract and bond for 30,000 Springfield muskets, and transmit the same to be filed in your officeP
This letter was not written, and the contract and bonds which it inclosed were not executed, until after much remonstrance and many appeals to the justice of the government; but this letter ends (as the order of the Holt-Owen commission begins) those transactions between the parties which constitute either a violation or a modification of their original agreement. On the part of the claimant it is said, “ The whole case resolves itself into this: That a contract was made with the claimant by the Chief of Ordnance, under the order of the Secretary of War, for the manufacture of 100,000 muskets, and that afterward a future Secretary of War, whether with the advice of this commission or not can make no difference, abrogated and set aside that contract, and refused to allow it to be performed only to the extent of the number of 30,000 muskets.”
On the part of the defendants .it- is said: “The claimant *68 accepted tbe proposition of tbe special commission to substitute a contract for 30,000 muskets for the order which he held; and, in legal intendment, this act of the claimant was voluntary. It does not lie with him now to say that this was not his intention.”
Laying aside the other points made by the defendants’ counsel, we rest our decision upon this one.
The contract was wholly unperformed on the part of the claimant. The defendants, through the Holt-Owen commission, proposed to the claimant one of two things: that it should be mutually “modified,” or that'it should be by them declared annulled. If the contract was valid, the commission had no power to annul it, and the claimant might have stood upon his legal rights, and have recovered the full measure of his legal redress, as did the claimant in Stevens’s Case. (2 O. Ols. R., p. 95.)
Instead of so doing, the claimant elected to accept the alternative and modify the agreement.
That modified agreement has been acted upon and executed by both parties. The defendants did not annul the original agreement; they merely gave notice that they would do so in a certain contingency. That contingency never happened, and its happening the claimant himself prevented. The original agreement was never, in fact, violated by the one party, nor performed by the other.
The case is entirely different from that of Bamsdell dr Smith, (2 O. Cls. R., p. 508,) for there .the claimant had performed, or offered to perform; his contract was no longer executory on his part, but executed. His legal rights were fully established in law; he had a complete and perfect cause of action. The arbitrary attempt of the Holt-Owen commission to force upon him a reduction of the price was but an agreement to take a part of the debt for the whole, when the whole was due — a nudum pactum, and of no legal" obligation.
The case at bar is a “ hard case,” and the court reaches its conclusion with lingering regret. The claimant made great expenditures on the faith of an agreeinent with his government, and at a time when it was believed that his expenditures would redound greatly to his country’s good. The work which he did was well and honestly done; the losses which he suffered remain wholly unrequited.; the officers of the government *69 induced bim to enter into tbe agreement, and tbe officers of tbe government prevented its performance. Tbe contract was not of bis seeking, and tbe losses under it are not to be ascribed to bis fault; yet it is a case where tbe claimant’s own act precludes a further consideration on tbe merits.
Tbe judgment of tbe court is that tbe petition be dismissed.
Drake, Cb. J., did not sit in this case, which was- tried before be took bis seat upon tbe bench.
Peck, J., dissented, on tbe ground that tbe defendants exercised duress, in compelling tbe claimant to submit to a modification of bis original contract.